IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 4  2010

GREGORY C. LANGHAM
CLERK

Civil Action No. 1:10-CV-01351-PAB

UNITED STATES OF AMERICA

    Plaintiff,

v.

CHARLES W. LEDFORD, Individually and as Trustee of
DOS MILAGROS TRUST II; LORAINE LEDFORD;
DOS MILAGROS TRUST II; TED PHILLIPS; CAROL
PHILLIPS; and PARK STATE BANK & TRUST

    Defendants

---

## DEFENDANT'S RESPONSE TO SUMMONS
## FOR COMPLAINT TO FORECLOSE FEDERAL TAX LIENS ON REAL PROPERTY
## AND MOTION TO DISMISS

Comes now Charles W. Ledford, individually and as trustee of Service Engineering Trust, and Loraine Ledford, in the name of our Lord Jesus Christ, to bear witness of the Truth and to take testimony. The Truth, Jesus Christ, is supreme in all priesthoods, jurisdictions and kingdoms. This response is to Plaintiff's "Complaint to Foreclose Federal Tax Liens on Real Property." Response is provided on a point to point basis.

**Points 1-4**. Plaintiff of record is "United States of America", however, this is a civil action brought by the "United States" to foreclose federal tax liens. It is the Defendant's belief that two distinct and separate entities are being represented here. Exactly who, or what is the definition of "United States of America" and who, or what is the definition of "United States" in this action? Identification is necessary before Defendant's can properly answer some of the

critical issues raised in this complaint.

The United States District Court lacks jurisdiction because the proper jurisdiction for land issues are found within the state court, thus denying Defendant's remedy.

Charles W. Ledford and Loraine Ledford are "domiciled" in Teller County Colorado; the "resident scam" is barred.

**Points 5-6.** Plaintiff alleges that tax assessments were made against Charles W. Ledford and Loraine Ledford. When preparing such alleged tax assessments, Agent William Becker of the Internal Revenue Service (IRS) testified under oath during deposition that he had used Subtitle A of the Internal Revenue Code to make his determinations. The only "persons made liable" in Subtitle A are withholding agents of non-resident aliens and foreign corporations. Becker went on to testify that he didn't believe the Ledford's were withholding agents of either non-resident aliens or foreign corporations, thus rendering his determinations in error and null and void from the beginning. These determinations were also made using an illegal, unauthorized and unsigned form. 26 U.S.C. 6020(b) authorizes the Secretary to make a substitute tax return, however, no such substitute return was ever made; instead a *"substitute FOR return"* (an unauthorized form) was made, allegedly by Agent William Becker because the form is unsigned.

> 26 U.S.C. § 6020. Returns prepared for or executed by Secretary
> (a) Preparation of return by Secretary
> If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, **the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.**
> (b) Execution of return by Secretary
> (1) Authority of Secretary to execute return
> If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefore, or makes, willfully or otherwise, a false or fraudulent return, **the Secretary shall make such return** from his own knowledge and from such information as he can obtain through testimony or otherwise.
> (2) Status of returns
> **Any return so made** and subscribed by the Secretary shall be prima facie good and sufficient for

all legal purposes. (Emphasis added)

26 U.S.C. 6061, Signing of Returns and Other Documents; (a) General rule
Except as otherwise provided by subsection (b) and sections 6062 and 6063, **any return return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed** in accordance with forms or regulations (Emphasis added)

The forms used by the Internal Revenue Service (IRS) in this case were unsigned "Form(s) 1040–U.S. Individual Income Tax Return" displaying OMB No. 1545-0074. Referring to the Code of Federal Regulations 1.1-1, under Income Tax on Individuals, Determination of Tax Liability, the proper OMB control number as 1545-0067 and is found on the Form 2555– Foreign Earned Income. Therefore, *"substitute FOR returns"* (not substitute tax returns as prescribed by law) were made using an invalid OMB Control number. The alleged tax assessed is indeed a penalty and not a tax. A tax and a penalty are not one and the same. Without a tax, no penalty can exist. Plaintiff is attempting to collect on a penalty and not a tax.

The Paperwork Reduction Act (PRA) 44 U.S.C. 3500-3520, protects the public from any penalty for failing to comply with a collection of information if a form does not display a valid Office of Management and Budget (OMB) control number.

> **44 U.S.C. § 3512. Public protection**
> (a) Notwithstanding any other provision of law**, no person shall be subject to any penalty for failing to comply** with a collection of information that is subject to this subchapter if—
> (1) the collection of information **does not display a valid control number** assigned by the Director in accordance with this subchapter; or
> (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
> (b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto. (Emphasis mine)

As required by law, Defendants were never informed that they were not required to respond to the collection of information unless the form displays a valid control number.

The "Form(s)1040–U.S. Individual Income Tax Return" do not display, nor have ever

displayed the proper OMB control number for a tax on individuals per the Code of Federal Regulations. While the absence of a valid OMB number may not preclude the statutory requirement for the filing of a tax return (which has never been identified in this case), or even the collection of tax, no such authority exists for the collection of a penalty. Defendants could find no case law that addresses this issue. This is a misapplication of law and a fraud before the court if left uncorrected by the Plaintiff.

On April 15, 1999, Charles Ledford made a conditional offer to pay any tax owed by Charles Ledford, Loraine Ledford and/or Service Engineering Trust. This offer was made and witnessed at the IRS Office in Denver, Colorado. This conditional offer to pay was dishonored and rejected by the IRS, thus rendering any debt due as discharged and no longer due.

**Points 7-9**. Charles W. Ledford and Loraine Ledford were indicted on October 4, 2004 and subsequent to his (Charles W. Ledford's) "sentencing", he did enter into a plea agreement on March 25, 2005. Prior to his sentencing date, Charles Ledford secured the services of a forensic, Certified Public Accountant who completed and/or amended tax returns for tax years 1990-2004. Upon the tax return completion, it was shown that there was no tax loss to the United States and in fact, a refund was due to the Ledford's. These tax returns were filed with the IRS and provided to the probation officer, an officer of the court, and prior to sentencing, thus establishing that the tax returns were indeed presented to the court as evidence.

Charles Ledford's attorney advised him to wait and introduce the foregoing tax returns as evidence into the court record on the day of sentencing. On the day of sentencing, Ledford's attorney sent him on a "wild goose chase" while he (Ledford's attorney) met privately with the prosecuting attorney and without Ledford being present. Ledford met back with his attorney less than one hour before the scheduled sentencing court date where he (Ledford) was told by his

attorney that if the tax returns were introduced as evidence, then "all deals were off" and prosecution would prosecute Ledford's wife and seek a sentence of five years instead of the plea agreement of two years. Ledford accepted the terms under threat, duress and coercion. Common sense would dictate that if there was evidence that would show there was no tax loss to the United States and would exonerate the Ledford's, there had to be other influences present to obstruct and keep Ledford from presenting such evidence. To date, the IRS has refused to accept the tax returns as filed and simply ignores them. These tax returns are signed affidavits by the Defendants who have first hand knowledge of the information therein.

Charles Ledford admitted that originally he had contracted with a trust organization in Utah to create trusts for real and personal property which were effective on August 13, 1992. Here let it be noted that the Ledford's filed tax returns in early 1993 for the tax year 1992 so there was no fraudulent attempt to hide assets. Besides, all such trusts were public record and un-hidden for any one to see.

After more education on trusts, Charles Ledford learned that there were indeed problems with these original trusts including such things as the "the rule against "in perpetuity", "certain distributions to beneficiaries" and other matters.

The Ledford's then contracted with Financial Fortress Concepts, a trust company, to correct errors in the original trusts. Based on their recommendations, the original trusts were to be dissolved because of the many errors that were found within them and new trusts were created under the inalienable right to contract. Some trusts, baring the same names as the original trusts per the recommendation of Financial Fortress Concepts, were created to correct and remedy the errors found within the original trusts.

On April 11, 1994, the new, private contract trusts were signed and became effective on

that date. Since this date, the beneficiaries of the trust have not changed nor have the trust assets been distributed to the beneficiaries. Neither Charles Ledford nor Loraine Ledford is the beneficiaries of the trusts created on April 11, 1994 but do have a fiduciary duty and obligation to defend the trusts.

**Points 13-17**. Charles Ledford and Loraine Ledford are domiciled in Teller Country Colorado; the "resident scam" is barred. They do not have an interest in the real property described as Parcel 1 and Parcel 2, but do have a common law lien in the form of a contract for Parcel 1, to maintain and preserve the trust assets for the beneficiaries.

The Ledford's believe that Ted Phillips and Carol Phillips have an interest in the real property described as Parcel 2 because this property was purchased by them from the parent's of Loraine Ledford, Ramon and Carmen Pacheco and subsequently their estate. This said property, Lot 18, Ranch Resorts of Colorado had been granted to Ramon and Carmen Pacheco as vacant land with certain small improvements (driveway, access to electrical power, etc.) for $21.00 in gold and silver coin (to preserve the right to trial by jury) AND "other good and valuable consideration." The Pacheco's constructed a house, well, septic system and other improvements before their estate sold this property to the Phillips. The "other good and valuable consideration", at fair market value but at a loss because of the turn-down in real estate values, was settled and completed by the Pacheco's when the property was sold to Ted and Carol Phillips. The Ledford's have no information concerning Park State Bank.

**Points 18-47.** As Charles Ledford continued to learn more about trusts, it was necessary to first amend and then create new trusts because of the fiduciary responsibilities and obligations to preserve the trust assets for the beneficiaries. Neither Charles Ledford nor Loraine Ledford has been beneficiaries to the trusts. During property grants, the beneficiaries and assets of the

trusts did not change and there was no sale or distribution of the trust assets.

Trust asset properties were simply temporarily moved so that a Land Patent could be brought forward for the properties in question. Based on their understanding and belief, this required that a flesh and blood man or woman bring forth the Land Patent per the stipulations in the original Land Patent that states in part:

> *"... TO HAVE AND TO HOLD the same, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature, thereunto belonging to said claimant <u>and to the heirs and assigns of the said claimant forever; ..."</u>* (emphasis added).

> LAND PATENT- ...A Patent for land is the highest evidence of title and is conclusive as against the government, and all claiming under junior patents or titles, until set aside or annulled...(Bouvier's Law Dictionary, Rawle's Third Edition)

After the land patents were brought forward and completed, the trust property assets were consolidated and moved into Dos Milagros Trust II where they remain to this day. With the exception of Lot 18 (Parcel 2), trust properties and assets were never sold and trust assets were not distributed to the beneficiaries and remain under the fiduciary responsibility and obligation of the trustees to preserve the trust assets for the beneficiaries. The trust beneficiaries did not change.

**Points 48-69.** Plaintiff is attempting to interfere and make null and void the obligation of contracts. New trusts were created by good-faith on August 8, 1993 after the original trusts that were created on August 13, 1992 were found to be defective. Plaintiff and the Internal Revenue Service (IRS) like to ignore this fact and would like to call the new trusts "fraudulent trusts, nominee trusts, alter-egos", etc. These are private contracts established under the inalienable right to contact and is recognized by the Constitution and the Uniform Commercial Code. Since the time of the creation of the new trusts, the trustees have directed the management of the trust assets for the benefit of the beneficiaries.

The Ledford's do maintain a contractual agreement that recognizes the "sweat equity" provided by the Ledford's to create, maintain, repair, keep in good working order and preserve the trust assets. Such evidence of this fair and equitable exchange wherein the Ledford's pay the property tax for the trust and for certain "sweat equity" improvements of the trust as a condition of the contract. Further evidence is that the Ledford's have never used this property tax payment as a tax deduction per the Internal Revenue Code, as if the property belonged to them.

Notice of tax liens (not actual tax liens) for alleged taxes owed were filed long after the properties was placed into trust on August 8, 1993. Again, these trusts were established under the common law right to contract that bars any law that interferes with the obligation of contracts. The trusts also incorporate the un-copyrighted version of the King James Bible as part of the trust indenture.

As the trust indenture was improved for the benefit of the beneficiaries, the trust remains the holder-in-due-course for the properties in question. The original instruments, unregistered, remain in the possession of the trust. True and correct copies only were filed to give public notice.

Plaintiff is attempting to rob Ted and Carol Phillips of their house and property which was granted to them for fair market value from the Pacheco Estate; which had been granted to the Pacheco's as vacant land at fair market value by Dos Milagros Trust II.

Plaintiff has presented only a portion of the contact that exists with the property grants (that they were conveyed for $21.00 in gold and silver coin to preserve trial by jury) and excluding that they were also for: **"and other good and valuable consideration."**

WHEREFORE, Defendants request and make motion that the "Complaint To Foreclose Federal Tax Liens On Real Property" be denied and dismissed with prejudice; that the Court

determine that the trusts are valid trusts created under the inalienable right to contact because the trust assets always remained for the benefit of the beneficiaries and the Ledford's are not the beneficiaries to the trust assets; that the trusts were well established before any taxes were allegedly assessed against the Defendants and notice of tax liens filed; that the notices of tax liens do not affect the trusts, which are separate entities; that Parcel 2, which was granted by Dos Milagros Trust II as vacant land at fair market value to the Pacheco's (who improved the land by adding a house, well, septic system and other improvements ) and in turn granted the property to Ted and Carol Phillips at fair market value (who have since made additional improvements) be eliminated from this action; and for all such other and future relief as may be appropriate whether or not specifically requested.

By: _____
Charles W. Ledford,

By: _____
Loraine Ledford

168 Fetlock Circle
Florissant, CO 80816
(719) 689-0246
leddogs@aol.com

Service Engineering Trust

## CERTIFICATE OF SERVICE

    I Charles W. Ledford and Loraine Ledford, by our signatures above certify that we have this 2nd day of August, 2010 served the Plaintiff with a copy of this pleading by prepaid, first class mail to:

Aaron M. Bailey
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, DC 20044
202-616-3164
202-307-0054 Fax
aaron.m.bailey@usdoj.gov