IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01351-PAB-MEH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHARLES W. LEDFORD, individually and as trustee of Dos Milagros Trust II,
LORAINE LEDFORD,
DOS MILAGROS TRUST II,
TED PHILLIPS,
CAROL PHILLIPS, and
PARK STATE BANK & TRUST,

    Defendants,

PACHECO FAMILY TRUST,

    Third Party Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Before the Court is the United States' Motion for Summary Judgment and Memorandum in Support against Defendants Charles Ledford, Loraine Ledford, and Dos Milagros Trust II or, Alternatively, as to Dos Milagros Trust II, for Default Judgment [filed March 18, 2011; docket #56]. The motion is referred to this Court for recommendation. (Docket #57.) The matter is fully briefed, and oral argument would not assist the Court in its adjudication. For the reasons stated below and the entire record herein, the Court **RECOMMENDS** the United States' Motion for Summary Judgment be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to

**BACKGROUND**

**I.     Procedural History**

Plaintiff United States initiated this lawsuit on June 10, 2010. (Docket #1.) Plaintiff seeks to foreclose federal tax liens on real property in Florissant, Colorado, arising from the enforcement of a judgment against Defendants Charles Ledford and Loraine Ledford ("Defendants" or "Ledford Defendants"), imposed in this district on March 11, 2010.[2] (*Id*. at 3-4.) The Ledford Defendants filed an answer to Plaintiff's complaint on August 4, 2010. (Docket #13.) Defendant Dos Milagros Trust II ("DMT") has not responded to Plaintiff's complaint.

On March 18, 2011, Plaintiff filed the motion at hand requesting summary judgment against the Ledford Defendants and DMT. (Docket #56.) Plaintiff asserts that summary judgment may be entered against these parties because (1) it has a valid federal tax lien; and (2) DMT is the nominee or alter ego of Defendant Charles Ledford; or in the alternative, (3) the transfer from Defendants to DMT was fraudulent under the Colorado Uniform Transfer Act. Defendants responded, contending that previously unfiled tax returns that were later prepared and submitted into evidence in the prior civil action against them, *United States v. Charles Ledford*, No. 07-cv-01568-WYD -KMT, 2010 WL 749843 (D. Colo. 2007), have never actually been litigated, thus summary judgment should not be entered. (Docket #73.) In its reply, Plaintiff argues that the taxes were the subject of the final

---

proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

[2]Plaintiff originally filed the action against two properties; the claims regarding the other property were resolved by settlement. (Docket #56 at 2.)

judgment in the previous civil case (from which no timely appeal was taken) and cannot be re-litigated. (Docket #79.)

## II.     Statement of Undisputed Material Facts

If "a party fails to properly address another party's assertion of fact as required by Rule 56(c)," Fed. R. Civ. P. 56(e) permits the Court to give such party an opportunity to do so, consider the non-contested facts undisputed, or "grant summary judgment if the motion and supporting materials . . . show the movant is entitled to it." Here, Defendants did not address the statement of undisputed facts proffered by Plaintiff, but presented their own brief set of as-described factual assertions. (Docket #73 at 2-3.) Defendants' factual statement simply challenges the underlying criminal case and prior litigation in which judgment was entered against them. (*See id*.) As further explained below, the Court agrees with Plaintiff that Defendants may not relitigate the previous final judgment in the present action. The Court thus rejects Defendants' statement as inapplicable to the matter at hand.

After review of Plaintiff's Statement of Undisputed Material Facts and corresponding exhibits presented by Plaintiff, the Court concludes that these facts are properly supported, non-contested, and stand undisputed. The Court recites Plaintiff's Statement of Undisputed Material Facts in full as follows:

1. During the 1980s and 1990s, Defendant Charles W. Ledford owned and operated a heating and air conditioning business under the name "Service Engineering" in Colorado Springs, Colorado. *See* Declaration of Aaron Bailey, docket #56-5, ("Bailey Dec."), Ex. 7, First Deposition of Charles Ledford ("First Ledford Dep.") at pp. 17, 19, 21, 23-25.

2. In 1992 and 1993 Charles Ledford became involved with various tax defier organizations, including the Pilot Connection Society and American Rights Litigators. First Ledford Dep. at pp. 39-42, 46.

3. In 2005, Charles and Loraine Ledford were each indicted for federal tax evasion and conspiracy to defraud the United States with regard to their 1992, 1993, 1994, and 1995 tax years. First Ledford Dep. at pp. 164-165; Bailey Dec., Ex. 3.

4. On April 11, 2005, Mr. Ledford pleaded guilty to conspiracy to defraud the United States in violation of 18 U.S.C. § 371. *See United States v. Charles W. Ledford*, Crim. Case No. 04-cr-419-MSK (D. Colo.), Doc. No. 120.

5. In his plea agreement, signed on March 25, 2005, Mr. Ledford admitted, inter alia, that he conspired to cause a tax loss to the federal government in an amount of $506,000 for the tax years 1992 through 1995. *See* Bailey Dec., Ex. 4, ¶ 2.

6. Prior to the criminal proceeding and civil tax assessments, in 1993 and 1994, Charles and Loraine Ledford purchased the parcels of property which constitute 168 Fetlock Circle in Florissant, Colorado ("the subject property") by warranty deeds granting the parcels to "Meadow Gate Trust, Wildflower Trust, and Mariposa Trust." These parcels were then deeded first to "Dos Milagros Trust (I)" and then from Dos Milagros Trust to the Ledfords on February 4, 2000. Bailey Dec., Ex. 4, ¶¶ 32-33; Declaration of Ginger Wray, docket #56-1, ("Wray Dec.") ¶ 6, Exs. 3-6.

7. Charles and Loraine Ledford are currently residing at the subject property, paying associated utilities and maintaining control of the property, despite having a deed recorded purportedly transferring the property from themselves to "Dos Milagros Trust II" on December 27, 2000. First Ledford Dep. at pp. 191-192; Bailey Dec., Ex. 9, January 26, 2010 Deposition of

Loraine Ledford ("Second Loraine Dep.") at p. 7; Ex. 10, January 26, 2010 Deposition of Charles Ledford ("Second Ledford Dep.") at p. 8.

8. In the stipulation of the factual basis for the plea agreement and conviction, Mr. Ledford stipulated to the following facts: that after 1992 he and his wife created more than 17 "trusts" in an effort to hide assets and income, including the formation of Dos Milagros Trust II; that he and his wife had not filed personal income tax returns for the years 1993 through 1995; that he and his wife concealed their assets by titling property in the name of the trusts, including Dos Milagros Trust II; and that they enjoyed complete control of the trusts. Bailey Dec., Ex. 4 at ¶¶19-31.

9. With respect to Dos Milagros Trust II, Ledford admitted that the transfer of title from the Ledfords to the trust in 2000 was part of the criminal conspiracy to hide assets from the United States. Bailey Dec., Ex. 4 at ¶¶ 43, 47.

10. In July 2007, the United States brought a civil suit to reduce the federal tax assessments to judgment and to foreclose on commercial property owned by the Ledfords. *See United States v. Charles Ledford, et al.*, 1:07-cv-01568-WYD -KMT (D. Colo. 2007) ("Ledford II").

11. The 2007 case resulted in the federal tax assessments against the Ledfords being reduced to judgment for 1983 through 1995, 1998, 1999, 2001 and 2002, the years underlying the liens at issue in this case. Bailey Dec., Ex. 1. *See also United States v. Ledford*, No. 07-cv-01568-WYD-KMT, 2010 WL 749843 (D. Colo. Mar. 3, 2010).

12. On April 30, 2010, judgment was entered against Charles Ledford in an amount exceeding $2 million. Judgment was also entered against Loraine Ledford in an amount exceeding $2 million. *Id*.

13. As a result of the judgment, the United States foreclosed its federal tax liens on the Ledfords' commercial property in Colorado Springs, Colorado. *See* Ledford II Doc. Nos. 119-135.

14. Despite this foreclosure and sale, a balance of over $1.5 million remains unpaid with respect to the Ledfords' 1993-1995 assessments alone. *See* Wray Dec., at ¶¶ 4-5, Exs.1-2.

15. On November 14, 2000, the United States recorded Notices of Federal Tax Lien ("NFTLs") with the Clerk and Recorder for Teller County, Colorado for the liabilities arising from, inter alia, the 1993, 1994 and 1995 federal income tax assessments against Charles and Loraine Ledford. *See* Wray Dec. ¶ 7, Exs. 7-8.

16. At the time of the filing of these NFTLs in November 2000, the subject property was titled in the names of Charles and Loraine Ledford. *See* Second Ledford Dep. at pp. 12:18-25, 13:1-12; Wray Dec., Ex. 3-8 (Feb. 4, 2000 Warranty Deeds to grantees Charles and Loraine Ledford).

17. The United States subsequently filed NFTLs for Ledfords' 1998, 1999, 2001, and 2002 liabilities on September 11, 2006, and refiled NFTLs for the 1993, 1994 and 1995 liabilities (thereby extending the statutory period of the liens), thereby preserving the effective collection period under the NFTLs. Wray Dec. at ¶ 7, Exs. 7-8.

18. From 2000 through the present, the Ledfords have resided at the subject property. No other persons have resided there during this period. Second Ledford Dep. at pp. 7:23-25, 8:1-14; Second Loraine Dep. at p. 7.

19. The Ledfords pay for the utilities on the property and exercise full control of the property. Second Ledford Dep. at pp. 10:22-25, 11, 12:1-15.

20. On June 10, 2010, the United States filed this instant action in the United States District Court for the District of Colorado, naming all parties who might have an interest in the property. *See* Compl. (docket # 1).

21. On July 10, 2010, Park State Bank and Trust filed a disclaimer as to its interest in the property. Disclaimer (docket # 5).

22. On December 2, 2010, the United States recorded its Judgments against the Ledfords with the Clerk and Recorder for Teller County, Colorado. *See* Bailey Dec., Ex. 6.

23. On or about February 24, 2011, the United States settled its claims against Ted and Carol Phillips, who have no interest in the parcels which comprise the property at 168 Fetlock Circle, Florissant, Colorado. *See* Compl. (docket #1); Motion to Vacate and Notice of Settlement (docket #52).

## LEGAL STANDARD

### I.   Summary Judgment Pursuant to Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that

the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may also simply point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The non-moving party bears the burden of showing that there are issues of material fact to be determined. *Id*. at 324.

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and ... if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.     Treatment of *Pro Se* Litigants' Briefing

A federal court must construe *pro se* litigants' "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [a *pro se* party's] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can

reasonably read the pleadings to state a valid claim on which the [*pro se* party] could prevail, it should do so despite the [*pro se* party's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

To prevail on summary judgment, Plaintiff must demonstrate that (1) a valid federal tax lien exists, and (2) Defendants retain an interest in the real property to which the lien is attached. *E.g., United States v. D'Andrea*, No. 09-cv-01940-PAB-MJW, 2010 WL 3842807, at *8-*9 (D. Colo. Aug. 31, 2010); *United States v. Goldston*, No. 06-cv-02153-REB-KLM, 2008 WL 6953893 (D. Colo. July 31, 2008); *United States v. Kalevik*, No. 03-cv-00411-CBS-BNB, 2007 WL 1891644, at *9 (D. Colo. June 29, 2007). The Court addresses each requirement in turn.

**I.     Valid Federal Tax Lien**

The responsibility of every citizen to pay taxes is well-settled. *See, e.g., Helvering v. Mitchell*, 303 U.S. 391, 399 (1938). "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Any lien imposed pursuant to Section 6321 arises "at the time the assessment is made" and continues until the judgment is satisfied. 26 U.S.C. § 6322. Once a Section 6321 lien attaches, the judgment may be satisfied by selling property owned by the

delinquent tax payer. 26 U.S.C. § 7403. The statutory scheme further contemplates the lawful effect of a lien imposed by Section 6321 even without filing notice of the lien. 26 U.S.C. § 6323.

Here, the validity of Defendants tax liability underlying the lien is firmly established. It is undisputed that the Ledford Defendants were indicted for federal tax evasion for the years 1992-1995, and Defendant Charles Ledford admitted his liability. The tax assessments for the years 1983 through 1995, 1998, 1999, 2001 and 2002 were reduced to judgment in the civil enforcement action decided in 2010. *See United States v. Ledford*, No. 07-cv-01568-WYD-KMT, 2010 WL 749843 (D. Colo. Mar. 3, 2010). This Court is entitled to give the previous matter precedential weight. *E.g., Sunshine Anthracite Coal. Co. v. Adkins*, 310 U.S. 381, 402 (1940) ("A judgment is res judicata in a second action upon the same claim between the same parties or those in privity with them."); *Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1486 (10th Cir. 1995) ("Under the doctrine of collateral estoppel, once a court decides an issue of law or fact that was fairly and fully litigated and necessary to its judgment, that issue may not be relitigated in a suit on a different cause of action."); *N. Natural Gas Co. v. Grounds*, 931 F.2d 679, 681 (10th Cir. 1991) (discussing res judicata and collateral estoppel and noting that "[i]n our system of jurisprudence the usual rule is that, once decided in a court of competent jurisdiction, merits of a legal claim are not subject to redetermination in another forum").

In Defendants' previous civil case, the court reduced to final judgment: (1) the penalties against Defendant Charles Ledford for the 1983 through 1992 tax years, (2) the tax assessments against Defendant Charles Ledford for 1998, 1999, 2001, and 2002, (3) the tax assessments against Defendants Charles and Loraine Ledford for 1993, 1994, and 1995, and (4) the penalties against Service Engineering Trust (controlled by Defendant Charles Ledford) on the tax assessments for 1993, 1994, and 1995, excluding the July 15, 1994 assessment, and any interest and penalties arising

therefrom. *Ledford*, 2010 WL 749843, at *1. Pursuant to 26 U.S.C. § 6322, the liens upon all of Defendants' property and rights to property arose at the time the tax assessments were made and will continue through the satisfaction of the final judgment.

The burden now shifts to Defendants to refute the facts presented by Plaintiff in light of the law stated above. *Celotex*, 477 U.S. at 324. Defendants do nothing more than suggest that the previously unfiled tax returns have not yet been litigated, which is a misstatement. (Docket #73 at 2.) Defendants admit that these tax returns were considered as evidence in the civil matter preceding this case. (*Id.* at 2-3.) As stated, final judgment was entered in that matter, Defendants did not timely appeal that judgment, and the Court is entitled to give the prior decision precedential weight. Nothing in the record presently before the Court counters Plaintiff's evidence supporting the validity of the federal tax lien attached to the subject property. Defendants fail to meet their burden of showing that a genuine issue of material fact remains as to the validity of the lien. The Court thus finds that a valid federal tax lien attached to the subject property exists.

**II.     Taxpayer Retains an Interest**

A valid tax lien attaches to any property owned by the taxpayer at the time the tax-deficiency assessment is made. 26 U.S.C. §§ 6321, 6322. Plaintiff asserts that the Ledford Defendants are the effective owners of the property at issue, since all other parties (with the exceptions of Plaintiff and DMT) have disclaimed any interest in the property. (Docket #56 at 10.) The United States filed Notices of Federal Tax Lien ("NFTL") against the subject property dated November 14, 2000, and subsequently for tax years 2006 and 2007. Plaintiff contends that "[t]he only question remaining is whether and to what extent the Ledfords had an interest in the subject property at the time the NFTLs were filed." (*Id.* at 9.)

11

In essence, Plaintiff asserts that the transfer of the subject property's title by the Ledford Defendants to DMT was a sham transfer for the purpose of shielding this property from being used to satisfy Defendants' outstanding tax debt, thus DMT's potential interest in the property (as title holder) is invalid. (*Id.* at 11.) Defendant Charles Ledford admitted as much in his plea agreement from the underlying criminal case. (*Id.*) Furthermore, the Ledford Defendants "live on the property, have had sole possession since at least 2000, and have taken all necessary steps to maintain the property including paying for its utilities." (*Id.*)

Plaintiff provides three different legal theories under which the Ledford Defendants, to the exclusion of DMT, retain an interest in the subject property: (1) DMT is a nominee of Defendants; (2) DMT is an alter ego of Defendants; and (3) the transfer of the property at issue from Defendants to DMT was fraudulent under the Colorado Uniform Transfer Act.

The Court first determines whether Plaintiff simply enjoys superior priority to the interest of DMT, assuming DMT's interest is otherwise valid (which it is not, as evaluated below). The Ledford Defendants transferred the deed for the subject property to themselves from another sham trust (Dos Milagros Trust I) on February 4, 2000. The United States filed its NFTLs dated November 14, 2000. The Ledford Defendants then transferred their interest to DMT on December 27, 2000. A federal tax lien "cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the interest." *United States v. Rodgers*, 461 U.S. 677, 691 n.16 (1983). As the Ledford Defendants were the only parties with a valid interest in the subject property at the time the NFTLs were filed, DMT's interest is inferior in priority to the Untied States' valid lien, pursuant to 26 U.S.C. § 6323. This is reason alone to determine that the Ledford Defendants retain an interest in the subject property. However, in the interest of a thorough analysis, the Court further finds that the transfer to DMT in December 2000 fails to trump Plaintiff's interest because

12

DMT is a nominee of the Ledford Defendants.

Property, within the statutory construction of 26 U.S.C. § 6321, includes "not only property and rights to property owned by the taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee ... of the delinquent taxpayer." *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007). "A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001). The Court must evaluate "whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership."[3] *Holman*, 505 F.3d at 1065 (citation omitted). To aid in this determination, the Court considers the following factors:

> (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Id.* at 1065 n.1 (citing *Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005)).

Plaintiff argues that the undisputed facts prove that DMT is a nominee of the Ledford Defendants. First, little consideration was paid for the transfer of the deed from Defendants to DMT: a mere "$21 in gold and silver coin." (Docket #56 at 12.) Second, since 2000 Defendants have been the only individuals to reside at the property. (*Id.* at 5.) Third, during this time Defendants have exercised full control over and maintained the property, including paying for utilities. (*Id.*) Fourth, Defendant Charles Ledford admitted that DMT was created to hide assets and

---

[3]"[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) (internal citation and quotation omitted).

Case 1:10-cv-01351-PAB-MEH   Document 87   Filed 07/13/11   USDC Colorado   Page 14 of 15

property transactions as part of a criminal conspiracy to defraud the United States. (*Id.* at 4.)

In relation to these six factors, the Court finds that after the transfer of the title to the property to DMT, very little, if anything changed. Defendants continued to use the property, maintain it, and manage it with no actual involvement by DMT. Plaintiff has submitted evidence to establish every element of its claim with regard to whether DMT is a nominee of Defendants.

The burden now shifts to Defendants to refute such a finding. *Celotex*, 477 U.S. at 324. Defendants have not submitted competent evidence in satisfaction of this burden but rather have previously admitted that the trust was part of a conspiracy to avoid tax liability and defraud Plaintiff. (*See* docket #56 at 3-4.) Defendants fail to meet their burden of showing that genuine issues of material fact remain as to DMT's sham interest in the subject property and to DMT's status as a nominee of the Ledford Defendants. The Court thus finds that the Ledford Defendants retain an interest in the real property to which the lien is attached, in their own capacities and through DMT as their nominee.[4]

Considering all of the above, the Court determines that Plaintiff has demonstrated the two elements necessary for it to prevail on summary judgment. The Court perceives no need to adjudicate Plaintiff's motion in terms of default judgment against DMT, as DMT is the Ledford Defendants' nominee.

## CONCLUSION

There is no genuine issue of material fact as to whether the federal tax lien is valid, or whether the Ledford Defendants retain an interest in the real property to which the lien is attached.

---

[4]Because the Court finds that DMT is a nominee of the Ledford Defendants, the Court believes it is unnecessary to consider Plaintiff's alternate theories, that the trust is also the alter ego of Defendants, and that the transfer of the property at issue was fraudulent under the Colorado Uniform Transfer Act.

Therefore, the Court believes Plaintiff is entitled to summary judgment in its favor. Based on the foregoing, the Court **RECOMMENDS** that Plaintiff United States' Motion for Summary Judgment and Memorandum in Support against Defendants Charles Ledford, Loraine Ledford, and Dos Milagros Trust II [filed March 18, 2011; docket #56] be **GRANTED**; judgment be entered against Defendants Charles Ledford, Loraine Ledford, and Dos Milagros Trust II (as nominee); and the United States' federal tax liens be foreclosed upon the real property at issue in this matter (168 Fetlock Circle, Florissant, Colorado) free and clear of the Ledford Defendants' interests.[5]

Respectfully submitted at Denver, Colorado, this 13th day of July, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[5] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).